In the Matter of LOUIS W. DINKELSPIEL, an Attorney, Respondent.

First Department, November 15, 1935.

*Cornelius O. Donahue* of counsel [*Barent L. Visscher* with him on the brief; *Einar Chrystie*, attorney], for the petitioner.

Respondent in person.

MARTIN, P. J. The respondent was admitted to the bar on July 19, 1895, at a General Term of the Supreme Court, First Department.

After hearings before an official referee, he has been found guilty of acts of professional misconduct. Two charges were considered by the referee. He found that the first was established but that the second was not sustained by a preponderance of the evidence.

The petition alleges that in February, 1934, one Cleanthe Logotheton retained the respondent to procure for her a patent on a hair pin which she had invented. Thereafter the respondent communicated with Victor J. Evans & Co., patent attorneys, who agreed, for a fee of fifteen dollars, to conduct a search. Out of that sum the respondent was to retain ten dollars as his commission. Miss Logotheton paid fifteen dollars to the respondent in the form of a money order and the search was conducted and disclosed that the pin was patentable. Evans & Co. then advised the respondent

that they would proceed with the application for the patent for the sum of one hundred forty-five dollars, payable one hundred fifteen dollars before the granting of the patent and thirty dollars thereafter. Of the sum of one hundred fifteen dollars, it was stated to the respondent that forty dollars must accompany the directions to proceed. The entire sum was to be disbursed as follows: Attorney's fee, seventy-five dollars; drawing fee, ten dollars, and two governmental fees of thirty dollars each, the second of which need not be paid until the patent was granted.

Although only forty dollars was required by Evans & Co. with the directions to proceed, the respondent informed his client that one hundred fifteen dollars must be paid at once. This was acceptable to Miss Logotheton, and on March 16, 1934, she gave him a check for one hundred fifteen dollars.

The respondent cashed this check and mingled the proceeds thereof with his own funds. He made no payment to Evans & Co., although he knew they would not proceed until they had received the initial sum of forty dollars. On May 6, 1934, the respondent wrote his client and falsely represented that although he had not received the papers he had information that they would be sent to him in a few days. At that time the respondent had not forwarded the papers to Evans & Co. This was followed by another letter of May 23, 1934, wherein the respondent expressed regret at the delay and then falsely stated that the last model he had sent (presumably to Washington) had been mislaid and requesting that a new drawing be mailed so that the matter could be attended to at once.

Thereafter the respondent borrowed the sum of forty dollars from Bernard Cowen, an attorney. There is a dispute in the record as to the facts surrounding the loan of this sum and the failure of the respondent to repay it has been made the basis of charge No. 2 against him. It is established, however, that Cowen's check for forty dollars, dated June 24, 1934, was forwarded by the respondent to Evans & Co., who immediately prepared a petition which Miss Logotheton signed on June 27, 1934, at the request of the respondent. Evans & Co. then prepared the application for the patent and requested the respondent to forward to them seventy-five dollars, the balance of the one hundred fifteen dollars paid by Miss Logotheton. The respondent did not comply with this request and Miss Logotheton, conducting an investigation on her own behalf, learned that the respondent had not paid the money to Evans & Co., and on July 12, 1934, demanded that he do so.

On that same day the respondent forwarded to Evans & Co. the petition which Miss Logotheton had signed on June 27, 1934.

He did not send the seventy-five dollars requested by Evans & Co., but stated that he would see them " within the next day or so."

On July 16, 1934, four days later, Evans & Co., not having heard from the respondent, wrote him requesting fifty dollars and agreeing that the balance of twenty-five dollars could be retained by the respondent pursuant to their agreement.

Miss Logotheton, after waiting for the respondent to pay Evans & Co. so that her application would be forwarded, paid Evans & Co. the sum of seventy-five dollars on August 2, 1934. Thereafter, and on August 11, 1934, the respondent wrote Miss Logotheton requesting seventy-five dollars as his fee, which he stated could be easily adjusted. Miss Logotheton thereupon complained to the committee on grievances of the petitioner. After a hearing before the committee, the respondent wrote Evans & Co. demanding payment of twenty-five dollars out of the seventy-five dollars they had received from Miss Logotheton.

The foregoing facts establish that the respondent converted to his own use the sum of one hundred fifteen dollars received from his client for the aforesaid specific purpose; that he was deceitful in his conduct with and unfaithful to his client and disregarded her interests, thereby jeopardizing the procurement of her patent by delaying the proceeding. ,

His attempt to justify his actions upon the claim that the seventy-five dollars was retained by him for his fee clearly is an afterthought and is negatived by his delay in paying the initial forty dollars to Evans & Co. and his subsequent borrowing of that sum in order to make the payment. At no time did the respondent claim that he was entitled to any fee out of the sum of one hundred fifteen dollars which he had received from his client nor did he claim that he had any lien thereon.

The second charge against this respondent relates to his having obtained the loan of forty dollars from Bernard Cowen upon the false representation that certain financial interests were about to form a company to develop and market an invention, and to provide the necessary capital in connection therewith; that the respondent was in a position to procure the substitution of Mr. Cowen in place of attorneys who were then handling the matter, upon payment of forty dollars then due for services and disbursements. He further represented that Cowen as such attorney would receive considerable fees from the new company which required the services of an attorney skilled in patent matters who would protect the invention against infringement and conduct the necessary litigation. This sum of forty dollars was never repaid by the respondent. Mr.

Cowen testified in support of this charge. The respondent testified in his own behalf and denied the charges.

The referee held that the testimony did not sustain the charge, saying: " Although I find the respondent is unworthy of belief and that he has practiced fraud and deceit upon his client, and I may suspect that he has not told the truth with respect to the conversation he had with Cowen when he begged for the loan, those circumstances alone do not constitute that preponderance of evidence always required in a disciplinary proceeding against an attorney."

The facts presented by this record lead us to conclude that the referee has taken a most charitable view with respect to the second charge.

We are of the opinion that because of his conduct in respect to the first charge the respondent should be disciplined. He is, therefore, suspended from practice for one year, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions incorporated in the order.

McAvoy, O'Malley, Townley and Glennon, JJ., concur.

Respondent suspended for one year.